## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| **SCOTT JOSEPHSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 3:12-cv-30150-MAP** |
| **v.** | ) | |
| | ) | |
| **BANK OF AMERICA CORPORATION,** | ) | **Demand for Jury Trial** |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## PLAINTIFF'S SECOND AMENDED, SUPPLEMENTAL
## AND RESTATED COMPLAINT REQUESTING JURY TRIAL

### PRELIMINARY STATEMENT

This is an action for damages brought by individual consumer, Scott Josephson, against Bank of America Corporation for violations of the Fair Credit Reporting Act (hereafter "FCRA"), 15 U.S.C. § 1681, *et seq.*, as amended, Massachusetts Consumer Protection laws, Mass. Gen. Laws ch.93, §50 *et. seq.*, and various other common law including Defamation, Infliction of Emotional Distress, Tortious Interference et. al., involving the credit reporting of a personal, unsecured installment loan account (hereafter "Loan" or "Promissory Note") established on June 11, 2005.

This action was originally filed in the United States Eastern District of Pennsylvania [2:11-cv-03875] and subsequently was granted transfer to this court for proper venue on August 23, 2012 [Docket No. 60].

The Plaintiff's Second Amended Complaint further enhances the Plaintiff's claims for damages against Bank of America as pleaded by the Plaintiff in his First Amended Complaint [Docket No. 38].

Draft – October 11, 2012

## THE PARTIES

1.      Plaintiff Scott Josephson is an adult individual residing at 37 Captain Road, Longmeadow, Massachusetts 01106.

2.      Defendant, Bank of America Corporation (hereafter "Bank of America"), is a business entity which regularly conducts business in Hampden County, Massachusetts and which has a principal place of business located at 1414 Main Street, Springfield, Massachusetts 01144.

## JURISDICTION & VENUE

3.      Jurisdiction of this Court arises under 28 U.S.C. § 1331, 1332, and supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

4.      Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b).

## FACTUAL ALLEGATIONS

5.      The Plaintiff's Second Amended Complaint asserts that Bank of America has violated its statutory duties as a furnisher under the FCRA, pursuant to 15 U.S.C. §1681s-2, 16 C.F.R. Part 660 and/or 12 C.F.R. 1022 Subpart E, to provide to credit reporting agencies, accurate credit information about the Plaintiff's Loan.  The Plaintiff has asserted that Bank of America has and continues to report inaccurate information about the Plaintiff's Loan that originated from account administration and transaction problems that Bank of America experienced upon its acquisition of Fleet Bank and the subsequent assumption and control of customer accounts including the Plaintiff's Loan.   The Plaintiff further asserts that these problems included administrative and control failures of accounts being transferred to Bank of America computer system(s), including multiple account number assignments for the Loan, questionable Loan transactions to restate several previous months of loan activity, and undisclosed credit transaction

items that were part of the restatement activity. The aforementioned credit transaction items, in the form of Fee Waivers, were recorded on January 4, 2006 and were neither disclosed, recorded nor reported within the Plaintiff's January 2006 monthly account statement until the Plaintiff received a document produced by Bank of America on August 24, 2009. Accordingly, the Plaintiff's Loan account balance, statements, account status and/or credit reporting of the Loan by Bank of America had become inaccurate.

6.      On or about April 1, 2004, Bank of America completed its merger of FleetBoston Financial Corp with Fleet Bank among its operating businesses.

7.      Prior to April 1, 2004, the Plaintiff had an ongoing financial relationship with Fleet Bank, including a primary checking account (hereafter "PCA") as well as a Checking Reserve Line of Credit /Overdraft Protection account (hereafter "ODP") which served to automatically transfer funds to the PCA when the PCA balance was not sufficient to cover such demands. The Plaintiff also had one installment obligation which was paid-off as part of a refinancing through the subject Loan.

8.      On June 11, 2005, the Plaintiff entered into a contractual agreement with Bank of America's recently acquired financial institution, Fleet Bank, for an unsecured, personal installment loan in the amount of $15,000.00 which was to be repaid in 48 equal, monthly installments with a simple interest, fixed rate of 12.24%.

9.      At the time of the loan's origination, Fleet Bank was offering a one-quarter of one percent interest rate discount promotion to its installment loan customers for agreeing to have installment loan payments automatically withdrawn from another, separately funded account such as the Plaintiff's PCA account or ODP.

10.     The Plaintiff's Loan originated on June 11, 2005 and was assigned an account number ending in 5192 by Fleet Bank.

11.     The Plaintiff received a letter from Bank of America dated July 5, 2005, indicating that his Loan was being assigned a new account number ending in 4599 under Bank of America name and/or letterhead.

12.     A new account number was also assigned to the Plaintiff's ODP under Bank of America name and/or letterhead ending in 6599, as well.

13.     In July 2005, the Plaintiff received a Bank of America Past Due notice, referencing the Fleet Bank Loan account number ending in 5192, indicating the first installment payment was late and overdue.

14.     On July 26, 2005, the Plaintiff visited his local Fleet Bank branch in an effort to learn why the Loan's first installment payment was not processed by Bank of America through the automatic payment process that the Plaintiff had authorized at loan origination on June 11, 2005.

15.     During that visit, the Plaintiff was informed that insufficient funds in the PCA account caused the Loan's July 11, 2005 installment automatic payment to fail.

16.     However, the Plaintiff's ODP account maintained sufficient funds before, during and after July 11, 2005 which should have enabled Bank of America's administrative systems to transfer funds to the Plaintiff's PCA account to cover the Loan's July 11, 2005 payment. Other demands on the PCA were evident and funded by the ODP before, after and on July 11, 2005.

17.     The Plaintiff was informed during the July 26, 2005 visit that account activity would have to be researched to determine why Bank of America's payment and transfer process failed. To date, no further explanation has been offered by Bank of America.

18.     As a result of Bank of America's failed process, the Plaintiff had to make the Loan's first payment at the time of the July 26, 2005 visit.

19.     Following the failure of automatic payment of the Loan's first installment payment, the promotional ¼ % interest rate reduction was voided.

20.     The late fee charged to the Plaintiff for the July 11, 2005 payment problem was waived.  Late fees and waivers continued to occur for several months thereafter until Bank of America could implement the automatic payment mechanism which ultimately did not occur.

21.     The Plaintiff received a second Bank of America letter, dated August 8, 2005, indicating the assignment of another new account number ending in 4299 for the Plaintiff's installment loan.  Since the Plaintiff held only one installment loan account with Fleet Bank as of June 11, 2005, the Plaintiff assumed that the new account was being assigned as a result of a problem with the initial Bank of America loan account number ending in 4599 [par. 11].

22.     In May 2009, the Plaintiff received a letter from Bank of America indicating that, at loan maturity on June 11, 2009, the loan would have a balance in excess of $1,400 that must be paid in full to satisfy the terms and conditions of the loan.

23.     In June 2009, the Plaintiff contacted Bank of America questioning the validity of the amount due on June 11, 2009 and to indicate that transaction issues resulted in an erroneous outstanding loan balance being reported by Bank of America.  Subsequently, the Plaintiff continued to dispute the accuracy of the Loan's account balance and withheld final payment until an accurate accounting of Loan activity could be completed by Bank of America.

24.     On August 24, 2009, the Plaintiff contacted and communicated to a loan service representative for Bank of America that the Plaintiff was continuing his dispute as to the validity and accuracy of the loan balance as well as to further question the account and transaction irregularities that occurred in 2005.

25.     Bank of America representative offered to generate a report named Account Transaction History (hereafter "ATHS") that the Plaintiff could use to reconcile account activity to the Loan's monthly account statements.

26.     The Plaintiff had no knowledge, as to the existence or availability of Bank of America's ATHS document prior to August 24, 2009.

27.     Upon receiving Bank of America's ATHS document, the Plaintiff began reconciling Loan activity against the Plaintiff's monthly loan statements as provided by Bank of America.

28.     The Plaintiff's reconciliation of Bank of America's ATHS document with the Plaintiff's monthly Loan account statements revealed transaction discrepancies between Bank of America's ATHS document and the Loan's January 2006 monthly statement produced by Bank of America.

29.     Bank of America's ATHS document shows 4 Late Fees and 2 Late Fee Waivers of $10 each being applied to the Plaintiff's account having a posting date of January 4, 2006.

30.     Conversely, the Plaintiff's January 2006 Loan statement shows only the four Late Fees of $10 each that correlate to the four ATHS document Late Fees, by effective date. However, the two Late Fee Waivers of $10 noted in Bank of America's ATHS document are not evident on the Plaintiff's January 2006 monthly loan statement.

31.     Despite the discrepancy, between Bank of America's ATHS document and the Plaintiff's January 2006 Loan statement produced by the Defendant, the outstanding principal balance between both reports were in agreement as of statement date January 27, 2006.

32.     To date, the Plaintiff has not received any type of account credit, refund or reimbursement of any kind related to the two Late Fee Waivers dated January 4, 2005 as evidenced in Bank of America's ATHS document.

33.     The Plaintiff had no prior knowledge of the January 4, 2006 Late Fee Waivers until receipt of the ATHS document Bank of America produced on August 24, 2009. Such information would have allowed the Plaintiff to seek immediate remedy from Bank of America to ensure that the Loan's balances, accounting and credit reporting were accurate.

34.    The Plaintiff asserts that Bank of America was either maintaining a minimum of two separate sets of records for the same loan activity or was undertaking undisclosed, remedial procedures by processing adjustments including those involving the January 4, 2006 Late Fee Waivers without disclosure.

35.    Additionally, Bank of America's ATHS document references the account number ending in 4299 even though activity in the document precedes the August 8, 2005 account number change notification for account number ending in 4299 [par. 22].  To date, the Plaintiff has not received Loan activity statements for any account other than for 4299.

36.    The Plaintiff's detection of the aforementioned Fee and Account / Statement discrepancies prompted the Plaintiff to accelerate dispute efforts regarding the validity and accuracy of the Loan's activity and balance.

37.    As a result of the outstanding balance remaining approximating $1,110.00, Bank of America proceeded to "Charge Off" the Plaintiff's Loan as a Bad Debt and reported the account status as well as the outstanding balance to various consumer reporting agencies in late 2009.

38.    Between November 2009 and April 2010, the Plaintiff escalated his dispute of the account's balance and credit reporting status by making numerous attempts to fax documentation and place telephone calls to Bank of America's Greensboro, North Carolina operations.

39.    The Plaintiff learned in January 2010, that the Plaintiff's dispute documentation was transferred from Greensboro, N.C., to Bank of America's Loss Mitigation unit in La Brea, CA.

40.    On January 15, 2010, The Plaintiff was put in contact with Bank of America's Loss Mitigation representative Mr. Rodney McNabb.   The Plaintiff faxed 46 pages of dispute documentation for Mr. McNabb to review in hopes of resolving the Plaintiff's dispute.

41.    Following the January 15, 2010 contact with Mr. McNabb, the Plaintiff had made several subsequent inquiries into the progress of his dispute and documentation review by Mr.

McNabb, without success. A second fax of dispute documentation was sent to his attention on February 24, 2010.

42.     On March 29, 2010, the Plaintiff submitted a complaint [# 01134353] to the Office of the Comptroller of the Currencies (hereafter "O.C.C.") in an effort to escalate the Plaintiff's dispute efforts against Bank of America by seeking regulatory intervention.

43.     On April 5, 2010, the Plaintiff again tried to continue his dispute efforts through Mr. McNabb without success and thus made an attempt to contact his supervisor. The Plaintiff was put in contact with Ms. Francis Valenzuela and learned that Mr. McNabb had been on a leave of absence for some time. The Plaintiff faxed similar dispute documentation to Ms. Valenzuela and allowed her several days to review faxed documentation before initiating follow up communication.

44.     Between April 16 and April 20, 2010, the Plaintiff contacted Ms. Valenzuela again in an effort to gain status of his dispute efforts regarding the Loan's balance and credit standing. On April 20, 2010, Ms. Valenzuela informed the Plaintiff that she had reviewed the documentation and that she believed there was sufficient evidence to support the merits of the Plaintiff's dispute and that Bank of America would submit a correction to the various consumer reporting agencies, to credit and clear the outstanding balance and remove the Charge Off status and change the credit reporting to paid as agreed.

45.     On May 3, 2010, the Plaintiff was contacted by Bank of America representative Jonathan Sallman of Bank of America's Office of the C.E.O. and President. Mr. Sallman contacted the Plaintiff to inform the Plaintiff that Bank of America was in receipt of an O.C.C. complaint initiated by the Plaintiff and that Mr. Sallman called to inquire as to the nature of the Plaintiff's complaint as well as resolve any issue with the Plaintiff. In addition, Mr. Sallman informed the Plaintiff that Bank of America would be submitting a response to the O.C.C. as part of the resolution process.

46.     The Plaintiff had informed Mr. Sallman that resolution of the matter was apparently in progress and offered him information to contact Ms. Valenzuela to gain details and confirmation.

47.     On May 7, 2010, Mr. Sallman again contacted the Plaintiff to inquire as to the nature of the Plaintiff's complaint, and again, the Plaintiff referred Mr. Sallman to Ms. Valenzuela. Approximately one-half hour after the initial May 7 call, Mr. Sallman called the Plaintiff back to inform the Plaintiff that Bank of America would effectively correct the credit reporting consistent with what Ms. Valenzuela had stated to the Plaintiff on April 20, 2010.  Mr. Sallman informed the Plaintiff that Bank of America would communicate this information in Bank of America's O.C.C. complaint response.

48.     On August 7, 2010, the Plaintiff was denied an automobile loan through Balise Hyundai dealership in Springfield, MA as a result of Bank of America's continued credit reporting of the Plaintiff's Loan as a Charge Off with a balance due, to the various consumer reporting agencies.

49.     On August 13, 2010, the Plaintiff submitted a dispute to consumer reporting agency Trans Union to which Bank of America verified to Trans Union that the reported "Charge Off" was indeed correct and it should continue to be reported as such.

50.     The Plaintiff continued to further dispute the inaccuracies through Trans Union during August 2010.

51.     While on vacation between August 18, 2010 and August 20, 2010, the Plaintiff placed several calls to Mr. Sallman as well as his manager, to try and understand why the consumer reporting inaccuracy remained unchanged and when a correction might occur.   Mr. Sallman informed the Plaintiff that it typically takes 30 to 60 days for reporting changes to the various consumer reporting agencies, to take effect.   At the time, Mr. Sallman's communication to the Plaintiff, more than 120 days had elapsed since Bank of America's O.C.C. response.

52.    The Plaintiff received a telephone call on August 31, 2010 from Bank of America representative Ms. Daphne McCoy to ask of the Plaintiff why he was disputing credit reporting information and also asked if the Plaintiff could provide proof of the payment.

53.    The Plaintiff became upset and responded in kind by refusing to have to recite his dispute history and informed Ms. McCoy that he would forward the O.C.C. letter that explained the May 7, 2010 conversation, between the Plaintiff and Mr. Sallman.

54.    Following receipt of the O.C.C. letter from the Plaintiff, Ms. McCoy contacted the Plaintiff to inform him that corrective actions were underway to remedy credit reporting of the Loan. Ms. McCoy, subsequently faxed a letter, dated September 1, 2010, to the Plaintiff indicating that remedial actions, to correct credit reporting, was underway.  In addition, the letter explicitly stated the effective date of the correction to be retroactive back to April 20, 2010 which is the date consistent with the Plaintiff's earlier discussions with Ms. Valenzuela [par. 45].

55.    In September 2010, the Plaintiff attempted good faith efforts to settle the dispute with Bank of America. The Plaintiff's settlement efforts included the communication and assertion of Loan inaccuracies and Credit Reporting issues along with consumer protection violations.

56.    The Plaintiff received a letter dated October 27, 2010 from Bank of America representative Terri Alvarado, expressing Bank of America's regret for the Plaintiff's negative customer experience.  The letter also states that, while the service experience was not typical at Bank of America, Bank of America respectfully declined the Plaintiff's proposal seeking financial recourse as a means to settle the matter and Bank of America considered the matter closed and final at that time. Since October 27, 2010, credit information about the Plaintiff's loan has inexplicably changed between January 2011 and April 2012 as disclosed in consumer reporting agency Experian ("Experian") credit reports for these time periods.

57.     Bank of America, through its duplicative and conflicting statements, misrepresented and/or concealed loan transaction information, as evidenced by the discrepancies between Bank of America's ATHS document, dated August 24, 2009, and the Plaintiff's January 2006 monthly statement for Bank of America account number ending in 4299.  The discrepancies involve information about Fee Waivers that would have otherwise benefitted the Plaintiff's Loan balance, credit standing and the accuracy of the credit information the Defendant was furnishing to consumer reporting agencies since January 2006.

58.     Due to the existence of such inaccuracies, Bank of America should not have Charged-off the Plaintiff's Loan and its outstanding balance in late 2009 until a full and proper accounting of all loan payments and activities occurred to determine the actual, true and correct outstanding balance.

59.     The Plaintiff's withholding of the final payment due June 11, 2009 was meritous until proper accounting of the Loan was completed by Bank of America.  Therefore, the 30 day past due status being reported by Bank of America about the Plaintiff's Loan represented by Bank of America account number ending in 4299 should be given consideration for invalidation.

60.     Prior to 2010, Bank of America had been reporting the correct terms of the Loan, as stated in the Truth-in-Lending section of the Promissory Note, which states that the Loan is for an amount of $15,000.00, having an interest rate of 12.24%, to be repaid in 48 equal, monthly payments of $396.78.

61.     Since 2010, the Loan information being reported to credit reporting agencies has inexplicably changed to having an original balance of $1,110 and a 1 (one) month duration.  The original balance of $1,110 is consistent with the outstanding balance at the time of the Loan Charge-Off.

62.     The Plaintiff has applied for and has been denied credit opportunities at various

times between 2010 and 2012 including:

(a)     Automobile refinancing denial through Bank of America on January 31, 2011;

(b)     Credit extension denial on May 26, 2011 by Citicards;

(c)     Credit denial for a $2,500.00 unsecure line of credit through financial institution TD
        Bank on August 21, 2011. The denial was the result of a low credit score
        communicated by Experian;

(d)     Credit denial for a $2,000.00 unsecure line of credit through financial institution TD
        Bank on May 1, 2012.

63.     As a result of the May 1, 2012 credit denial, the Plaintiff contacted Experian on June

26, 2012 to request a credit report which was produced and identified by Experian as credit report

number 3279-9911-24.

64.     On July 10, 2012, the Plaintiff contacted Experian to dispute information within

Experian credit report number 3279-9911-24 about information being furnished by Bank of

America about Bank of America account number ending in 4299. The Plaintiff conveyed to the

Experian representative that the Plaintiff was involved in litigation concerning Bank of America

account number ending in 4299 and that credit information being furnished by Bank of America had

changed from previously reported information about the account contained in a 2011 Experian

credit report and that the information being furnished by Bank of America in Experian's credit

report number 3279-9911-24 does not accurately reflect the original, true and correct credit terms

and information about the Loan being represented by Bank of America account number ending in

4299 in consumer reports.

65.     The Plaintiff communicated to the Experian representative, during the July 10, 2012

dispute, that Bank of America account number ending in 4299 was being reported inaccurately

regarding the original balance of $1,110 and one (1) month term which was being reported as 30

days late. The Plaintiff further communicated, to the Experian representative during the July 10, 2012 dispute, the true and correct credit terms and information about the Promissory Note were for $15,000.00 having a 48 month term. The Plaintiff stated to the Experian representative that the true and correct credit terms and information about the loan were clearly indicated in the Loan's Truth-in-Lending disclosure section of the Loan's Promissory Note and that current credit information furnished by Bank of America was a gross misrepresentation of the true and correct Loan disclosure information.

66.    On July 17, 2012, Bank of America verified the accuracy of the credit information it was furnishing about Bank of America account number ending in 4299 which was being reported in Experian's credit report number 3279-9911-24 as $1,110 original balance having a one (1) month term and being 30 days late.

67.    On July 31, 2012, the Plaintiff attempted to purchase a vehicle through Lia Hyundai in Enfield, CT. The Plaintiff applied for and was subsequently denied an automobile loan through Brookline Bank – Indirect Auto Finance (hereafter "Brookline Bank") as a result of the information supplied by Experian.

68.    A second automobile financing application was submitted through Lia Hyundai, on behalf of the Plaintiff, to M&T Bank on July 31, 2012 for the same automobile and was approved by M&T as a result of credit information supplied by Trans Union.

69.    Subsequently, the Plaintiff received a letter dated July 31, 2012, from Brookline Bank – Indirect Auto Finance, explaining the reasons for its automobile loan denial.

70.    The Brookline Bank letter disclosed the sources and scores of two consumer reporting agencies, one each from consumer reporting agencies Trans Union and Experian, respectively for determining the automobile loan denial.

71.     In the July 31, 2012 Brookline Bank credit denial letter, a credit score of 671 was determined from Trans Union information while a credit score of 601 was determined from information by Experian.

72.     Since the Plaintiff had copies of recently requested credit reports from Experian, the Plaintiff contacted Trans Union on 8/21/2012 to request a credit report which was produced on 8/24/2012 that references File Number 310708616.

73.     The Plaintiff compared the recently requested credit reports from Trans Union and Experian and determined that the primary credit information discrepancy between the reports from each respective consumer reporting agency was the information being reported for Bank of America account number ending in 4299.

74.     The Plaintiff asserts that Bank of America had previously determined that inaccuracies about the balance and status of the Plaintiff's Loan were evident yet it continued to report such inaccurate information about the Plaintiff's Loan represented by Bank of America account number ending in 4299 to consumer reporting agencies.

75.     The information Bank of America is furnishing about of Bank of America account number ending in 4299 to various credit reporting agencies purports a significantly higher loan obligation than the true and correct monthly loan payment terms would imply based on the Promissory Note's Truth-In-Lending disclosure information.  Additionally, the one month term being reported as 30 days late indicates a significantly poor and unsatisfactory payment performance and history being communicated to prospective creditors by Bank of America.

76.     Bank of America continues to verify and report information about Bank of America account number ending in 4299 that is different from information disclosed in the Truth-in-Lending section of the Promissory Note which Bank of America has in its custody, possession and control.

77.     Despite Bank of America maintaining information in its custody, control and possession about the correct Loan information, Bank of America has had reasonable cause to know that Bank of America has been and continues to report inaccurate information through the issuance of false and inaccurate credit information and consumer credit reports to consumer reporting agencies and ultimately disseminated to third party users and credit grantors, both known and unknown involving Bank of America account number ending in 4299.

78.     The inaccurate credit information that Bank of America has been furnishing to consumer reporting agencies about Bank of America account number ending in 4299 portrays a negative and derogatory credit repayment history and indicates a poor financial responsibility as a debtor and about the Plaintiff's credit worthiness.

79.     And, despite the Plaintiff's exhaustive efforts to date, Bank of America has nonetheless deliberately, willfully, intentionally, recklessly or negligently repeated its failure to perform timely and reasonable investigations following the foregoing bona fide disputes as required by the FCRA, has failed to remove the inaccurate information, has failed to report on the results of its investigations to all consumer reporting agencies, has failed to note the disputed status of the inaccurate information, has failed to update and properly maintain information and has continued to report the derogatory inaccurate information about the Plaintiff involving Bank of America account number ending in 4299.

80.     Bank of America has maintained information in its custody, possession and control to know that inaccurate credit information being reported about him could adversely affect prospective employment opportunities. The Plaintiff had provided professional information within the application to qualify, and ultimately be approved for, a Home Equity Line of Credit (hereafter "HELOC") on or about May 5, 2007. Bank of America's knowledge and information about the

Plaintiff's profession should have given cause to further protect the Plaintiff's consumer rights and wellbeing.

81.     Due to the nature of the Plaintiff's profession in Corporate Finance, the inaccuracies being reported by Bank of America, has caused further distress to the Plaintiff, his professional, financial and personal wellbeing resulting from potential negative action by potential employers who may require credit inquiries and credit investigations as a condition of employment.

82.     The Plaintiff explicitly communicated numerous times in late 2009 and early 2010 fax cover letters that the Plaintiff was working with Wells Fargo to modify and refinance his first mortgage. The inaccuracies and lack of dispute notices to consumer reporting agencies for account 4299, caused further distress to the Plaintiff as a result of not knowing whether his Wells Fargo first mortgage refinancing request would be approved or not.

83.     As a result of conduct by Bank of America, Plaintiff has suffered actual damages in the form of a) lost credit opportunities, b) harm to reputation and credit score, c) loss of privacy, and e) emotional distress, arising from credit information being reported about Bank of America account number ending in 4299.

84.     At all times pertinent hereto, Bank of America was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendant herein.

85.     The conduct of Bank of America, as well as that of its agents, servants and/or employees, was malicious, intentional, willful, reckless, or alternatively negligent in its duties under federal and state laws as well as in protecting the rights and wellbeing of the Plaintiff herein.

86.     Bank of America, as well as that of its agents, servants and/or employees, had reasonable cause to know that the consumer credit information that the Defendant was furnishing about the Plaintiff's Loan, to various credit reporting agencies, was false, misleading and/or

inaccurate based on information in its custody, control and possession at all times following the Plaintiff's O.C.C. complaint and Trans Union dispute in 2010 as well as the Plaintiff's 2012 Experian dispute.

87.     The Plaintiff further asserts that the Defendant failed in its duties to correct or improve the accuracy of consumer records that Bank of America was and is furnishing to credit reporting agencies about the terms of and liability for the account or other relationship and is substantiated by the furnisher's records at the time it is furnished.

88.     The Plaintiff asserts that his disputes are bona fide based on direct and credit reporting agency disputes involving Bank of America's furnishing of inaccurate Loan  information including the inaccurate reporting of Loan terms, Bank of America's failure to conduct a reasonable investigation into the status of the Plaintiff's charged-off account and Bank of America's failure to timely modify or delete such inaccurate information following Bank of America's discovery of the inaccuracies,

89.     The Plaintiff further asserts that his disputes are bona fide as a result of Bank of America's acknowledgement of reported inaccuracies about the Plaintiff's Promissory Note to consumer reporting agencies after January 4, 2006.

## COUNT I
## VIOLATIONS OF FCRA

90.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

91.     At all times pertinent hereto, Bank of America, was a "person" as that term is defined by 15 U.S.C. § 1681a(b).

92.     At all times pertinent hereto, Bank of America, was a "furnisher" as that term is defined by 15 U.S.C. § 1681e(d)(1)(A) , 16 C.F.R. Part 660 §660.2(c) and/ or 12 C.F.R. 1022.41(c).

93.    At all times pertinent hereto, the term "accuracy" means that information as defined by 15 U.S.C. § 1681s-2(e), 16 C.F.R. Part 660 §660.2(c) and/or 12 C.F.R. 1022.41(a).

94.    At all times pertinent hereto, the term "integrity" means that information as defined by 15 U.S.C. § 1681s-2(e), 16 C.F.R. Part 660 §660.2(e) and/or 12 C.F.R. 1022.41(e).

95.    Bank of America has failed to comply with the statutes of the FCRA by willfully, knowingly or negligently furnishing inaccurate information and failing to follow reasonable procedures to determine and communicate accurate information about the Plaintiff's Loan, the Loan's balance, the Loan's duration and credit status as represented by Bank of America account number ending in 4299 to all consumer reporting agencies in response to the Plaintiff's August 13, 2012 Trans Union Dispute.

96.    Bank of America, through its willful, knowing or negligent failure to maintain reasonable procedures and accurate records, with integrity, violated 15 U.S.C. § 1681s-2(b)(1) of the FCRA by engaging in the following conduct upon receiving notice of the Plaintiff's August 13, 2010 consumer dispute from consumer reporting agency Trans Union:

(a)    Pursuant to 15 U.S.C. § 1681s-2(b)(1)(A) of the FCRA, Bank of America willfully, knowingly, recklessly or negligently failed to comply with the requirements imposed on furnishers of information, to conduct a reasonable investigation, following receipt of consumer dispute information from Trans Union between August 13, 2010 and August 17, 2010, by relying upon information in Bank of America's custody, possession and control since April 2010, in order to correct inaccurate consumer information about the Plaintiff's Loan;

(b)    Pursuant to 15 U.S.C. § 1681s-2(b)(1)(B) of the FCRA, Bank of America willfully, knowingly, recklessly or negligently failed to review all relevant information, provided by consumer reporting agency Trans Union, pursuant to § 1681i, between August 13, 2010 and August 17, 2010, that involves Bank of America's correction of consumer information involving the Plaintiff's Loan charge-off status and outstanding balance.

(c)    Pursuant to 15 U.S.C. § 1681s-2(b)(1)(D) of the FCRA, Bank of America willfully, knowingly, recklessly or negligently failed to review as well as report the discovery of false information, including balances, disclosures and/or active consumer disputes, to all consumer reporting agencies involving the Plaintiff's Loan;

(d)     Pursuant to 15 U.S.C. § 1681s-2(b)(1)(E) of the FCRA, Bank of America willfully, knowingly, recklessly or negligently failed to promptly modify, delete or block the reporting of inaccurate consumer information upon reinvestigation or subsequent discovery of inaccurate or misleading consumer information about the transactions, balances and/or credit terms involving the Plaintiff's Loan that is represented by Bank of America account ending in 4299.

97.     The conduct of Bank of America was a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, damages and harm to Plaintiff that are outlined more fully above and, as a result, Bank of America is liable to compensate Plaintiff, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o, for the full amount of statutory, actual and punitive damages, along with the attorneys' fees (if applicable) and the costs of litigation, as well as such further relief, as may be permitted by law.

## COUNT II
## VIOLATIONS OF FCRA

98.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

99.     At all times pertinent hereto, Bank of America, was a "person" as that term is defined by 15 U.S.C. § 1681a(b).

100.    At all times pertinent hereto, Bank of America, was a "furnisher" as that term is defined by 15 U.S.C. § 1681e(d)(1)(A) , 16 C.F.R. Part 660 §660.2(c) and/ or 12 C.F.R. 1022.41(c).

101.    At all times pertinent hereto, the term "accuracy" means that information as defined by 15 U.S.C. § 1681s-2(e) , 16 C.F.R. Part 660 §660.2(c) and/or 12 C.F.R. 1022.41(a).

102.    At all times pertinent hereto, the term "integrity" means that information as defined by 15 U.S.C. § 1681s-2(e), 16 C.F.R. Part 660 §660.2(e) and/or 12 C.F.R. 1022.41(e).

103.     Bank of America has failed to comply with the statutes of the FCRA by willfully, knowingly or negligently furnishing inaccurate information and failing to follow reasonable procedures to determine and communicate accurate information about the Plaintiff's Loan, the Loan's balance, the Loan's duration and credit status as represented by Bank of America account number ending in 4299 to all consumer reporting agencies.

104.     Bank of America, through its willful, knowing or negligent failure to maintain reasonable procedures and accurate records, with integrity, violated section 1681s-2(b)(1) of the FCRA by engaging in the following conduct in response to the Plaintiff's July 10, 2012 consumer dispute to credit reporting agency Experian and verifying, on July 17, 2012, that the information being reported about the Plaintiff's Loan as being accurate at that time.

(a)     Pursuant to 15 U.S.C. § 1681s-2(b)(1)(A) of the FCRA, Bank of America willfully, knowingly, recklessly or negligently failed to comply with the requirements imposed on furnishers of information, to conduct a reasonable investigation following receipt of consumer dispute information from Experian, between July 10, 2012 and July 17, 2012, by relying upon the use of information in Bank of America's custody, possession and control to correct inaccurate consumer information about the Plaintiff's Loan terms and represented by Bank of America account ending in 4299;

(b)     Pursuant to 15 U.S.C. § 1681s-2(b)(1)(B) of the FCRA, Bank of America willfully, knowingly, recklessly or negligently failed to review all relevant information, provided by Experian pursuant to § 1681i between July 10, 2012 and July 17, 2012, in order to correct consumer information being reported by Bank of America, since 2010, involving the credit terms, balance and account status of the Plaintiff's Loan represented by Bank of America account ending in 4299;

(c)     Pursuant to 15 U.S.C. § 1681s-2(b)(1)(D) of the FCRA, Bank of America willfully, knowingly, recklessly or negligently failed to review as well as report the discovery of false information, including balances, disclosures and/or active consumer disputes, to all consumer reporting agencies involving the Plaintiff's Loan;

(d)     Pursuant to 15 U.S.C. § 1681s-2(b)(1)(E) of the FCRA, Bank of America willfully, knowingly, recklessly or negligently failed to promptly modify, delete or block the reporting of inaccurate consumer information upon reinvestigation or subsequent discovery of inaccurate or misleading consumer information about the transactions, balances and/or credit terms involving the Plaintiff's Loan that is represented by Bank of America account ending in 4299.

105.    The conduct of Bank of America was a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, damages and harm to Plaintiff that are outlined more fully above and, as a result, Bank of America is liable to compensate Plaintiff, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o, for the full amount of statutory, actual and punitive damages, along with the attorneys' fees (if applicable) and the costs of litigation, as well as such further relief, as may be permitted by law.

### COUNT III
### MASSACHUSETTS CONSUMER PROTECTION LAWS
### M.G.L. Chapter 93, Section 54A

106.    Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

107.    At all times pertinent hereto Plaintiff and Bank of America were "persons" as that term is defined by M.G.L. c. 93 § 50.

108.    At all times pertinent hereto Bank of America was engaged in "trade" and/or "commerce" as those terms are defined by M.G.L. c. 93 § 50.

109.    Massachusetts General Law Chapter 93, section 54A(a) requires that "Every person who furnishes information to a consumer reporting agency shall follow reasonable procedures to ensure that the information reported to a consumer reporting agency is accurate and complete. No person may provide information to a consumer reporting agency if such person knows or has reasonable cause to believe such information is not accurate or complete".

110.    Bank of America has knowingly or having reasonable cause to believe that information about the Plaintiff's installment loan balance and other loan information, represented by Bank of America account number ending in 4299, has and is being furnished inaccurately, in violation of M.G.L. Chapter 93, section 54A(a).

111.    The Fair Credit Reporting Act's qualified exception at 15 U.S.C. §1681t(b)(1)(F)(i) allows this cause of action.

112.    Bank of America's conduct, was a direct and proximate cause, as well as a substantial factor, in causing the serious injuries, damages and harm to the Plaintiff that are outlined more fully above, and as a result of Bank of America's actions, are liable to compensate Plaintiff for the full amount of actual and punitive damages, along with attorney's fees (if applicable) and costs, and such other relief, as permitted by M.G.L. c. 93, §63 and §64.

## COUNT IV
## DEFAMATION

113.    Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

114.    Bank of America knowingly made false or misleading representations in communications to consumer reporting agencies, as far back as January 2006, regarding the performance, character, extent and/or amount of the Plaintiff's debt.

115.    At the times pertinent hereto, Bank of America, has published statements both orally and/or through writing to various consumer reporting agencies, that are false and negative representations concerning Plaintiff's credit information and history with reckless disregard for the truth of the matters asserted.

116.    Upon being notified and acknowledging inaccuracies, Bank of America continues to publish and report(s) to third parties inaccurate information about Plaintiff.

117.    Defendant, Bank of America, knowingly made statements that were false when made and had no factual basis for making those statements, which Bank of America continues to publish such false and inaccurate statements up to and through the present time.

118.    The written statements and publications constitute libel per se.

119.    The oral statements and publications constitute slander per se.

120.    Bank of America's publication, directly and through its contractual agents, the consumer reporting agencies, of such false and inaccurate information has severely damaged the personal and consumer reputation of Plaintiff and caused damage to reputation, severe humiliation, emotional distress, mental anguish to plaintiff and has limited the Plaintiff's ability to obtain credit.

121.    Bank of America has and/or is continuing, with willful intent or reckless disregard for maximum accuracy, allowed false and/or inaccurate information to be reported, as recently as July 26, 2012, about credit terms and information about the Promissory Note which are more fully and accurately disclosed in the Truth-In-Lending section of the Promissory Note as stated by the Plaintiff in his July 10, 2012 dispute.  The current consumer information is misleading to third party users as to the financed amount, duration and payment terms of the Promissory Note and credit information represented by Bank of America account number ending in 4299.

122.    Bank of America has and/or is, with willful intent or reckless disregard, reported inaccurate information in a misleading manner about Bank of America account number ending in 4299 by mischaracterizing the true and correct credit information disclosed in the Truth-In-Lending section of the Promissory Note.  The nature of the inaccurate information is being mischaracterized in such a way that would mislead third party users about the Plaintiff's payment history and creditworthiness.

123.    Due to Bank of America's willful, malicious or reckless conduct, the Fair Credit Reporting Act's qualified immunity at 15 U.S.C. §1681h(e) does not apply to this cause of action.

124.    The conduct of Bank of America was a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, damages and harm to Plaintiff that are outlined more fully above and, as a result, Defendant is liable to compensate the Plaintiff for the full amount of actual, compensatory and punitive damages, as well as such other relief, permitted under the law.

## COUNT V
## INFLICTION OF EMOTIONAL DISTRESS

125.   Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

126.   Bank of America, through its conduct, caused the Plaintiff to act unnecessarily by having to actively and effectively resolve the foregoing issues despite Bank of America's factual knowledge within its control and possession to correct inaccurate consumer information about account ending in 4299, thus causing distress, humiliation, and frustration upon the Plaintiff.

127.   As result of Bank of America's failure to comply with the FCRA statute to report accurate information with integrity about Bank of America account number ending in 4299, the plaintiff's credit score remained reduced, thus prohibiting further benefit from credit at various times between 2010 and 2012, and in turn plaintiff suffered humiliation, undue worry and stress about the impact of credit information impacting mortgage refinancing opportunities in turn causing strained relations with spouse, anguish, and overall distress.

128.   Due to Bank of America's willful, malicious or reckless conduct, the Fair Credit Reporting Act's qualified immunity at 15 U.S.C. §1681h(e) does not apply to this cause of action.

129.   The conduct of Bank of America was a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, damages and harm to Plaintiff that are outlined more fully above and, as a result, Defendant is liable to compensate the Plaintiff for the full amount of actual, compensatory and punitive damages, as well as such other relief, permitted under the law.

## COUNT VI
## INVASION OF PRIVACY

130.   Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

131.   Bank of America has willfully, recklessly or negligently invaded plaintiff's personal and financial privacy and caused plaintiff to suffer damages due to its acts and omissions described herein. Bank of America invaded plaintiff's privacy by requiring the Plaintiff to actively and effectively resolve the foregoing issues despite Bank of America's factual knowledge and information that was readily available to them that should have enabled them to follow through with the necessary remedial and corrective actions without the Plaintiff's intervention. [par. 53-55].

132.   Due to Bank of America's willful, malicious or reckless conduct, the Fair Credit Reporting Act's qualified immunity at 15 U.S.C. §1681h(e) does not apply to this cause of action.

133.   The conduct of Bank of America was a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, damages and harm to Plaintiff that are outlined more fully above and, as a result, Bank of America is liable to compensate the Plaintiff for the full amount of actual, compensatory and punitive damages, as well as such other relief, permitted under the law.

## COUNT VII
## PROPERTY DAMAGE /
## IMPAIRMENT OF CREDIT RATING

134.   Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

135.   Bank of America knowingly made false or misleading representation in communications to consumer reporting agencies since January 2006 as to the character, extent or amount of the Plaintiff's debt.

136.   Bank of America willfully, maliciously, recklessly or negligently damaged plaintiff's property rights in his credit reports and reputation [par. 72].

137.   The conduct of Bank of America was a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, damages and harm to Plaintiff that are

outlined more fully above and, as a result, Bank of America is liable to compensate the Plaintiff for the full amount of actual, compensatory and punitive damages, as well as such other relief, permitted under the law.

**COUNT VIII**
**INTERFERENCE OF**
**PROSPECTIVE CONTRACTUAL RELATIONS**

138.   The willful conduct of Bank of America has prohibited the Plaintiff from obtaining unsecured credit opportunities that would otherwise allow the Plaintiff to reduce or payoff the numerous debt obligations owed to the Defendant [par 62 (c)-(d)].

The conduct of Bank of America was a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, damages and harm to Plaintiff that are outlined more fully above and, as a result, Bank of America is liable to compensate the Plaintiff for the full amount of actual, compensatory and punitive damages, as well as such other relief, permitted under the law.

**JURY TRIAL DEMAND**

140.   Plaintiff demands trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks judgment in Plaintiff's favor and damages against the Defendant, based on the following requested relief:

(a)   Monetary and Non-Monetary damages of $1,000,000.00 or Statutory damages;

(b)   Punitive damages;

(c)   Reasonable legal and court costs;

(d)    An order directing that Bank of America notify all consumer reporting agencies to immediately delete and cease reporting information regarding Bank of America account No. ending in 4299;

(e)    Such other and further relief as may be necessary, just and proper.


Respectfully Submitted,

**Scott R. Josephson**

BY:

Plaintiff Pro Per
37 Captain Road
Longmeadow, MA 01106
(413) 237-1479
scojo43@aol.com

Dated: December 7, 2012

## **AFFIDAVIT**

I, Scott R. Josephson, declare under the penalty of perjury of the laws of the United States that the foregoing is a document solely administered, controlled and produced by me and that the foregoing is true and correct.

Executed this __7ᵀᴴ__ day of __December__ , 2012 at Longmeadow, Massachusetts.

**Scott R. Josephson**
Plaintiff Pro Per
37 Captain Road
Longmeadow, MA 01106
(413) 237-1479
scojo43@aol.com

STATE OF _Massachusetts_

COUNTY OF _Hampden_

Subscribed and sworn to (or affirmed) on this day of _7th Dec_ , of 20 _12_ by

_Scott R. Josephson_ proved to me on the basis of satisfactory evidence

to be the person(s) to appeared before me

My commission expires:

Lindsay A. Malmborg
Notary Public
My Commission Expires February 20, 2015
Commonwealth of Massachusetts

Notary Public or Commissioner of Oaths

## CERTIFICATE OF SERVICE

I, Scott R. Josephson, pro se Plaintiff, hereby certify that a true and correct copy of the foregoing, Plaintiff's Second Amended, Supplemental and Restated Complaint, was served, via first class mail, postage prepaid to the following:

Kristyn Dery Kaupas, Esquire
Wilson, Elser, Moskowitz,
Edelman & Dicker, LLP
14th Floor
260 Franklin Street
Boston, MA  02110-3112
kristyn.kaupas@wilsonelser.com

Attorneys for Defendant
Bank of America

Scott R. Josephson
Plaintiff Pro Per
37 Captain Road
Longmeadow, MA 01106
(413) 237-1479
scojo43@aol.com

Date: December 7th 2012